UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOSE GARZON, AS PARENT AND
NATURAL GUARDIAN OF M.G., ET
AL.,

                    **Plaintiffs,**

       **- against -**

MELISSA AVILES-RAMOS, ET AL.,

                    **Defendants.**

25-cv-5284 (JGK)

<u>Memorandum
Opinion and Order</u>

---

**John G. Koeltl, District Judge:**

The plaintiffs, Jose Garzon and Maria Navarro-Carillo, acting individually and on behalf of M.G., a child with a disability, brought this action against the New York City Department of Education (the "DOE") and Melissa Aviles-Ramos ("Aviles-Ramos"), in her official capacity as Chancellor of the New York City Department of Education, pursuant to the Individuals with Disabilities in Education Act ("IDEA"), 20 U.S.C § 1400, <u>et seq.</u> <u>See</u> Compl., ECF No. 1. On November 18, 2025, the plaintiffs moved for summary judgment on all their requests for relief. <u>See</u> Pls.' Mot. for Summ. J., ECF No. 18. On January 15, 2026, the defendants cross-moved for summary judgment, seeking dismissal of the complaint in its entirety. <u>See</u> Defs.' Mot. for Summ. J., ECF No. 25. For the reasons that follow, the plaintiffs' motion is **denied**, and the defendants' cross-motion is **granted**.

## I.

## A.

"Congress enacted the IDEA to promote the education of students with disabilities." <u>A.M. ex rel. Y.N. v. N.Y.C. Dep't of Educ.</u>, 964 F. Supp. 2d 270, 274 (S.D.N.Y. 2013). "Under the IDEA, states receiving federal funds are required to provide 'all children with disabilities' a 'free appropriate public education.'"[1] <u>Gagliardo v. Arlington Cent. Sch. Dist.</u>, 489 F.3d 105, 107 (2d Cir. 2007) (quoting 20 U.S.C. § 1412(a)(1)(A)); <u>see also</u> <u>Walczak v. Fla. Union Free Sch. Dist.</u>, 142 F.3d 119, 122 (2d Cir. 1998). A free appropriate public education ("FAPE") must provide "special education and related services tailored to meet the unique needs of a particular child, and be reasonably calculated to enable the child to receive educational benefits." <u>Gagliardo</u>, 489 F.3d at 107.

To achieve this end, the IDEA requires state or local education agencies to provide each disabled student with an individualized education program ("IEP") specifying the student's educational needs and "the specially designed instruction and related services to be employed to meet those needs." <u>Doe v. E. Lyme Bd. of Educ.</u>, 790 F.3d 440, 448 (2d Cir. 2015). Parents may challenge their child's IEP as inadequate by filing a Due Process Complaint ("DPC"), which triggers an administrative-review process by an Impartial Hearing Officer ("IHO"). <u>See</u> <u>M.W. ex rel. S.W. v. N.Y.C. Dep't of Educ.</u>, 725

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

F.3d 131, 135 (2d Cir. 2013) (citing 20 U.S.C. § 1415(b)(6), (f); N.Y. Educ. Law § 4404(1)). A party may appeal the decision of the IHO to a DOE State Review Officer ("SRO"), and the SRO's decision may be challenged in state or federal court. M.W., 725 F.3d at 135–36. Once this administrative process is exhausted, either party may file a civil action in federal or state court challenging the administrative decision. See 20 U.S.C. § 1415(i)(2)(A); N.Y. Educ. Law § 4404(3).

If a school district fails to provide a FAPE to a child with disabilities, the child's parents may, at their own financial risk, refuse the improper placement, enroll the child in an appropriate private school, and retroactively seek reimbursement from the state for the cost of the private school by bringing a DPC. See Sch. Comm. of the Town of Burlington, Mass. v. Dep't of Educ. of Mass., 471 U.S. 359, 370 (1985). The Supreme Court has established the three-pronged Burlington/Carter test to determine eligibility for reimbursement, which looks to (1) whether the school district's proposed plan will provide the child with a free appropriate public education; (2) whether the parents' private placement is appropriate to the child's needs; and (3) a consideration of the equities. C.F. ex rel. R.F. v. N.Y.C. Dep't of Educ., 746 F.3d 68, 73 (2d Cir. 2014); see also Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter, 510 U.S. 7, 12–13 (1993); Burlington, 471 U.S. at 370.

3

**B.**

The following facts are taken from the parties' supporting papers and relevant administrative records and are undisputed unless otherwise noted.

M.G. is a 16-year-old minor who is a student in New York. Administrative Record ("A.R.") 303, ECF No. 17. M.G. sustained a severe brain injury and has been diagnosed with multiple disabilities, including severe developmental delay, spastic quadriplegia, neuromuscular scoliosis, significant expressive and receptive aphasia, cerebral palsy, and seizure disorder. Id. at 420. She is mostly nonverbal. Id. at 312. M.G. attended the International Institute of the Brain ("iBrain") for the 2023–24 school year in an 8:1:1 setting with 1:1 paraprofessional support and various related services. Id. at 10.

A Committee on Special Education ("CSE") convened on March 27, 2024, determined that M.G. was eligible for special education services and developed an Individualized Education Plan for the 2024–25 school year (the "IEP"). Id. at 303–363. The IEP incorporated significant portions of M.G.'s education plan from iBrain from the 2023–24 school year (the "iBrain Plan"). See id. at 303, 303–63, 364–87. The IEP included the following recommendations, many of which were consistent with the iBrain Plan:

- 8:1:1 special education class;
- Physical therapy ("PT") - 1:1 - 5x/week, 60-minute sessions;
- Occupational therapy ("OT") - 1:1 - 4x/week, 60-minute sessions;
- Speech/Language ("SL") therapy - 1:1 - 4x/week, 60-minute sessions;
- Speech/Language ("SL") therapy – group - 1x/week, 60-minute session;
- Assistive Technology ("AT") services - 1x/week, 60 minute session;

4

- Vision Education Services ("VES") - 1:1 - 2x/week, 60 minute sessions;
- 1:1 Paraprofessional;
- Parent counseling and training - 1x/month, 60-minute group session; and
- Specialized transportation.

Compare id. at 352–53, 358, 480, with id. at 444, 448–50. The IEP also noted various examples of the progress M.G. was making at iBrain. See, e.g., id. at 304, 323. The DOE ultimately recommended that M.G. be placed in a specialized District School rather than continue enrollment at iBrain. Id. at 477–80.

In a ten-day notice dated June 14, 2024, the plaintiffs informed the DOE that they rejected the IEP. Id. at 117–18. In the ten-day notice, the plaintiffs informed the DOE of their intention to continue M.G.'s placement at iBrain for the 2024–25 school year and requested that the DOE fund her pendency placement at iBrain during the due process proceedings. Id.

On July 8, 2024, the plaintiffs filed a Due Process Complaint ("DPC"), alleging in pertinent part that (1) the DOE did not offer M.G. a FAPE for the 2024–25 school year, (2) the unilateral placement or continued placement of M.G. at iBrain was appropriate, and (3) equitable considerations favored an award of full tuition payment directly to iBrain, direct payment for 1:1 paraprofessional services, and direct payment for transportation services. Id. at 108–116. In the DPC, the plaintiffs also requested an order maintaining M.G.'s pendency placement at iBrain and requiring the DOE to fund M.G.'s placement at iBrain during the pendency of the due process proceedings. Id. at 109.

On July 22, 2024, the IHO assigned to adjudicate the administrative hearing issued a pendency order based on a decision from the SRO for the 2023–24 school year. Id. at 52. The pendency order required the DOE to fund M.G.'s tuition at iBrain, as well as paraprofessional and transportation services for M.G., during the pendency of the due process proceeding. Id.

The IHO scheduled a two-part Due Process Hearing for August 25, 2024, and September 16, 2024, in which any testimony would be presented by affidavit. Id. at 551. The IHO ordered the parties to disclose affidavits for any witnesses at least five days before the hearing. Id. On August 2, 2024, the IHO reminded both parties of the deadline during a pre-hearing conference and by e-mail. Id. at 552, 558. Neither party submitted affidavits before the deadline. Id. at 553. The IHO therefore declined to allow either party to present witness testimony at the hearing. Id. at 582–84. The IHO offered the plaintiffs an opportunity to withdraw their claim and refile, or instead to proceed with the hearing as scheduled; the plaintiffs chose to proceed with the scheduled hearing without witness testimony. Id.

On October 8, 2024, the IHO issued a Findings of Fact and Decision ("FOFD") finding that the DOE had offered M.G. a FAPE for the 2024–25 school year. Id. at 43–47. The IHO also found in the alternative that the plaintiffs had not met their burden under the second and third prongs of the Burlington/Carter analysis because the plaintiffs offered no evidence of how the iBrain Plan was being implemented and because equitable considerations did not favor the plaintiffs. Id. at 47–48. The IHO accordingly denied the

plaintiffs' request for reimbursement for their unilateral placement of M.G. at iBrain. See id. at 48. The plaintiffs appealed the FOFD. Id. at 56. On April 4, 2025, the SRO issued a decision upholding the IHO's determination. Id. at 22. The plaintiffs commenced this action on June 24, 2025. See Compl. ECF No. 1.

## II.

In federal court, summary judgment "is a pragmatic procedural mechanism for reviewing administrative decisions." T.P. ex rel. S.P. v. Mamaroneck Union Free Sch. Dist., 554 F.3d 247, 252 (2d Cir. 2009). In reviewing an action pursuant to 20 U.S.C. § 1415(i)(2)(C), the district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." P.C. v. Rye City Sch. Dist., 232 F. Supp. 3d 394, 406 (S.D.N.Y. 2017). The court's standard of review is "a more critical appraisal of the agency determination than clear-error review but falls well short of complete de novo review." L.O. ex rel. K.T. v. N.Y.C. Dep't of Educ., 822 F.3d 95, 108 (2d Cir. 2016). While the district court independently reviews the administrative record and makes a determination based on a preponderance of the evidence, it is "expected to give due weight to [administrative] proceedings, mindful that the judiciary generally lacks the specialized knowledge and experience necessary to resolve persistent and difficult questions of educational

policy." Walczak v. Fla. Union Free Sch. Dist., 142 F.3d 119, 129 (2d Cir. 1998); see also M.H. v. N.Y.C. Dep't of Educ., 685 F.3d 217, 240 (2d Cir. 2012).

### III.

Parents dissatisfied with a district's recommended school placement for their child may unilaterally place their child in a private school and seek tuition reimbursement from the district. See 20 U.S.C. § 1412(a)(10)(C). However, parents who choose to place their children in a private school "during the pendency of review proceedings, without the consent of state or local school officials, do so at their own financial risk." Florence Cnty. Sch. Dist. Four, 510 U.S. at 15. The Burlington/Carter test governs whether a district is required to pay for the private program selected by the parent. See T.M. ex rel. A.M. v. Cornwall Cent. Sch. Dist., 752 F.3d 145, 152 (2d Cir. 2014). Parents are entitled to reimbursement if: (1) the school district's proposed placement violated the IDEA, (2) the parents' alternative private placement was appropriate, and (3) equitable considerations favor reimbursement. Id. The DOE bears the burden on the first prong of the test to establish that the student's IEP provided a FAPE. See M.W. ex rel. S.W. v. N.Y.C. Dep't of Educ., 725 F.3d 131, 135 (2d Cir. 2013). If the DOE fails to meet this burden, the parents then bear the burden to establish that the alternative private placement was appropriate and that the equities favor the parents. Id.

## A.

The parties first dispute whether the DOE complied with the July 24, 2024, pendency order. It is undisputed that the DOE has paid the total amount for M.G.'s tuition at iBrain while the due process complaint was being litigated, namely $327,767.60 toward pendency tuition. See Defs.' Mem. of Law Supp. Mot. ("Defs.' Br.") 17, ECF No. 26; Pls.' Mem. Opp'n Mot. ("Pls.' Opp.") 1, ECF No. 30; see also Decl. of Sapna Kapoor ("Kapoor Decl.") ¶ 8, ECF No. 27. It is also undisputed that the DOE has paid pendency transportation costs for M.G., namely $250,875.00 toward pendency transportation. See Defs.' Br. 17; Pls.' Opp. 1; Kapoor Decl. ¶ 8. However, the plaintiffs contend that the DOE must also pay late fees and interest incurred pursuant to a contract between the plaintiffs and iBrain; the plaintiffs allege that the DOE failed to make timely payments according to a schedule contained in that contract, which triggered late fees and interest. See Pls.' Mem. of Law Supp. Mot. ("Pls. Br.") 12–13, ECF No. 21. The defendants respond that any late fees and interest were incurred pursuant to a private contract between the plaintiffs and iBrain to which the DOE is not a party. See Defs.' Br. 18. The defendants contend that the DOE did not agree to make payments to iBrain pursuant to the schedule contained in the contract, nor did the DOE agree to be bound by the late-payment provisions contained therein. See id. Instead, the defendants contend, the DOE was only required to adhere to the pendency order, which provided for payment of tuition and transportation. See id. at 18–19.

The defendants are correct that the DOE was only required to adhere to the pendency order, not the contract between the plaintiffs and iBrain. See Davis v. Banks, No. 22-cv-8184, 2023 WL 5917659, at *4 (S.D.N.Y. Sept. 11, 2023) ("[T]he sole source of the DOE's reimbursement obligations in each Plaintiff's case is the applicable administrative order."). In this case, the pendency order provides that the DOE must pay for "tuition" and "transportation," but makes no mention of late fees or interest, or any obligation that may have been incurred by the plaintiffs pursuant to their private contract with iBrain. See A.R. 52. The DOE is therefore not required to pay late fees and interest. See Chaperon v. Banks, No. 24-cv-05135, 2025 WL 2207908, at *9 (S.D.N.Y. Aug. 4, 2025) ("[R]equiring Defendants to pay late fees in accordance with a private contract runs contrary to the principle that, under IDEA, DOE is only required to pay pendency tuition retroactively, not prospectively."); see also Davis v. Aviles-Ramos, No. 25-cv-7555, 2026 WL 44725, at *4–5 (S.D.N.Y. Jan. 7, 2026).

In resisting the defendants' arguments, the plaintiffs rely heavily on Mendez v. Aviles-Ramos, No. 25-cv-1096, 2025 WL 2793755 (S.D.N.Y. Oct. 1, 2025), reconsideration denied, No. 25-cv-1096, 2025 WL 2962007 (S.D.N.Y. Oct. 20, 2025), but that reliance is mistaken. In Mendez, the court required the payment of late fees and interest on the ground that the applicable administrative order required the DOE to "fund the costs . . . at the contracted rate." 2025 WL 2793755, at *5. In this case, the pendency order includes no such broad directive to pay fees or costs pursuant to a private contract.

10

Moreover, it would be particularly inappropriate to require the DOE to make additional payments for late fees and interest in this case, where both the IHO and SRO eventually found that the defendants provided M.G. with a FAPE for the 2024–25 school year and that no payments for that school year were actually owed. A.R. 45, 47. The plaintiffs' request for an order requiring the DOE to pay late fees and interest is therefore **denied.**

**B.**

The parties next dispute the merits of the IHO's and SRO's decisions. The IHO found that the DOE provided M.G. with a FAPE for the 2024–25 school year, that iBrain was not an appropriate unilateral placement for M.G., and that the equities did not favor reimbursement for M.G.'s placement at iBrain. A.R. 43–48. The SRO affirmed the denial of reimbursement on the grounds that the DOE provided M.G. with a FAPE and therefore did not reach the second and third prongs of the Burlington/Carter framework. Id. at 22. The plaintiffs argue that the IHO's and SRO's decisions are not entitled to deference and that their conclusions are erroneous; the defendants argue to the contrary.

**1.**

The plaintiffs argue that the IHO's and SRO's findings are not entitled to deference. Pls.' Br. 14.

In reviewing an action pursuant to the IDEA, the district court "shall receive the records of the administrative proceedings [and] shall hear

11

additional evidence at the request of a party." 20 U.S.C. § 1415(i)(2)(C)(i–ii); see P.C., 232 F. Supp. 3d at 406. A district court should defer to administrative findings where the district court's decision "is based entirely on the same evidence as that before the SRO . . . ." M.H., 685 F.3d at 244. In this case, because the parties' cross-motions are based solely on the administrative record, see ECF No. 10, the Court should defer to the administrative decisions if supported by the record. See L.J.B. v. N. Rockland Cent. Sch. Dist., 660 F. Supp. 3d 235, 256 (S.D.N.Y. 2023).

Additionally, a district "court must defer to the SRO's decision on matters requiring educational expertise unless it concludes that the decision was inadequately reasoned . . . ." R.E. v. N.Y.C. Dep't of Educ., 694 F.3d 167, 189 (2d Cir. 2012). The Supreme Court has instructed reviewing courts to be careful not to "substitute their own notions of sound educational policy for those of the school authorities which they review." Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley, 458 U.S. 176, 206 (1982). In this case, the IHO's and SRO's conclusions that the DOE offered M.G. a FAPE for the 2024–25 school year warrant substantial deference because those determinations rest on pedagogical judgments based on a review of both the IEP, the iBrain Plan, and their supporting documents.

Having concluded that the IHO's and SRO's determinations involved matters requiring educational expertise, the Court must also consider whether the SRO's decision was well-reasoned. An administrative decision is well-reasoned when it "conduct[s] a thorough review of the entire record . . .

12

and clearly explain[s] the bases for [its] conclusions." <u>M.W. ex rel. A.W. v. Bd. of Educ. of Enlarged City Sch. Dist. of Middletown, N.Y.</u>, No. 12-cv-1476, 2013 WL 2631068, at *23 (S.D.N.Y. June 12, 2013), <u>aff'd sub nom.</u>, <u>Ward ex rel. A.W. v. Bd. of Educ. of Enlarged City Sch. Dist. of Middletown, N.Y.</u>, 568 F. App'x 18 (2d Cir. 2014).

In this case, both the IHO and the SRO conducted a thorough review of the record. A.R. 14–16, 30–36, 43–47. Thus, although the defendants argue in a conclusory fashion that the IHO's and SRO's decisions were not well-reasoned, Defs.' Br. 14–15, the record shows otherwise.

Because both the IHO and SRO thoroughly reviewed the evidence and adequately explained their conclusions that the DOE offered M.G. a FAPE for the 2024–25 school year, that determination is entitled to deference. <u>See</u> <u>N.K. v. N.Y.C. Dep't of Educ.</u>, 961 F. Supp. 2d 577, 587 (S.D.N.Y. 2013) ("Here, the conclusion of the IHO and SRO that the DOE provided J.K. a FAPE were well reasoned, thorough, and supported by the record. They therefore warrant deference.")

### 2.

The plaintiffs argue that the IHO and SRO incorrectly concluded that the DOE offered M.G. a FAPE for the 2024–25 school year. At the outset, the plaintiffs contend that the IEP offered by the DOE was insufficient because it relied on assessments conducted by iBrain, rather than by the DOE. <u>See</u> Pls.' Br. 15. But the plaintiffs cite no authority for the proposition that the IDEA

requires school districts to conduct their own assessments for purposes of developing an IEP, rather than relying on private assessments. Indeed, courts in this District have upheld SRO determinations that a school district provided a FAPE, even where the underlying IEP was based on private evaluations. See, e.g., Mackey ex rel. Thomas M. v. Bd. of Educ. for Arlington Cent. Sch. Dist., 373 F. Supp. 2d 292, 299 (S.D.N.Y. 2005).

As discussed above, the IEP was largely based on the iBrain Plan, which was designed for iBrain's extended school day. The main substantive argument advanced by the plaintiffs is that the IEP was inadequate because the DOE's comparatively shorter school day could not possibly implement all of the related services contained in the IEP and which were offered to M.G. at iBrain. See Pls.' Br. 15–16. But the IHO found, and the SRO affirmed, that the DOE could adequately offer at least some of the services on a push-in basis and it was thus possible to implement the IEP without an extended school day.[2] See A.R. 46, 88, 353–54.

For example, the IEP provides for 17 hours of related services and 35 periods of special education and largely affords discretion to the relevant providers to determine where and how those services are administered. Id. at 41.

---

[2] The plaintiffs also argue that the provision of related services to M.G. on a push-in basis constitutes a denial of a FAPE given M.G.'s need to be in a quiet and isolated environment to avoid overstimulation, but they do not explain how or why push-in services would be inadequate in this regard, Pls.' Br. 16, especially given that many of the same related services were administered by iBrain on a push-in basis, see A.R. 279–80.

One of the seven related services was scheduled for five times per week for 60 minutes each; the remaining services were scheduled for one to four times per week for 60 minutes each. Id. The IHO and SRO thus correctly determined that it was possible for the DOE to implement all of the related services contained in the IEP, even if some of those services were offered on a push-in basis. The plaintiffs' argument that it would not be possible to implement the IEP in a standard school day is, therefore, speculative, see Neske v. Banks, No. 22-cv-6946, 2024 WL 1313160 (S.D.N.Y. Mar. 26, 2024), and the SRO and IHO did not err in concluding that the DOE offered M.G. a FAPE for the 2024–25 school year.

### 3.

The plaintiffs next contend that the IHO erred at the second and third steps of the Burlington/Carter framework in concluding that the plaintiffs failed to establish that iBrain was an appropriate placement for M.G. and that the equities did not favor the plaintiffs.[3] Because the SRO did not

---

[3] The plaintiffs also argue that the IHO improperly refused to allow the plaintiffs to offer witness testimony regarding the appropriateness of M.G.'s placement at iBrain. But, as the SRO found, the IHO imposed a reasonable requirement—that the parties did not dispute—that witness testimony would be presented by affidavit. See A.R. 551. The plaintiffs failed to produce witness affidavits in accordance with the schedule set by the IHO, and the IHO offered the plaintiffs the option to continue with the hearing solely on documentary evidence or instead to withdraw the complaint and initiate a new proceeding. Id. at 582-84. All of this was within the sound discretion of the IHO. See N.Y. Comp. Codes R. & Regs. tit. 8, § 200.5(i)(3)(xiii)(f) (2024). Moreover, the plaintiffs do not explain how any affidavits would have changed the result of the Due Process Hearing. See Pls.' Br. 17-19.

consider the second and third prongs of the Burlington/Carter test, and because the DOE offered M.G. a FAPE for the 2024–25 school year, it is not necessary to reach these issues to decide the current motions. See Cornett v. Banks, No. 23-cv-06893, 2025 WL 712799, at *8 (S.D.N.Y. Mar. 5, 2025) ("Because [the student] has not been denied a FAPE, it is unnecessary for the Court to evaluate the remaining two prongs.").

However, the third Burlington/Carter prong supports a denial of reimbursement because the equities do not favor the plaintiffs.[4] The IDEA provides that a request for tuition reimbursement for a unilateral private school placement may be denied "upon a judicial finding of unreasonableness with respect to actions taken by the parents," 20 U.S.C. § 1412(a)(10)(C)(iii)(III), including conduct showing a lack of intent to enroll a child in public school. See, e.g., Thies v. N.Y.C. Bd. of Educ., No. 07-cv-2000, 2008 WL 344728, at *9–10 (S.D.N.Y. Feb. 4, 2008). In this case, the IHO found that the plaintiffs "preemptively rejected any possible public program before the IEP meeting was even held," and "demonstrated their lack of meaningful consideration by declining to even contact the [proposed

---

[4] Under the second prong of Burlington/Carter, the parents bear the burden of proving that their private placement is appropriate. See R.E., 694 F.3d at 185; see also N.Y. Educ. Law §§ 4401(1)(c). The IHO concluded that the plaintiffs had failed to meet their burden to show that M.G.'s placement at iBrain was appropriate. See A.R. 47. It is difficult to reconcile the IHO's conclusion with the fact that the DOE adopted nearly the entirety of the iBrain Plan into the IEP, which the IHO found to be adequate. However, because the DOE offered M.G. a FAPE, and because the equities do not favor the plaintiffs, the second Burlington/Carter prong does not provide a basis for reimbursement.

16

placement school] or attempt to visit before notifying the DOE of their formal rejection." A.R. 47. The plaintiffs offer no meaningful response to the IHO's finding. See Pls.' Br. 20–21. Therefore, because the equities do not favor the plaintiffs, the third Burlington/Carter prong provides a further basis for denying reimbursement.

## CONCLUSION

The Court has considered all of the parties' arguments. To the extent not specifically addressed, those arguments are either moot or without merit. For the foregoing reasons, the plaintiffs' motion for summary judgment is **denied**, and the defendants' cross-motion for summary judgment is **granted**.

The Clerk is respectfully requested to enter judgment dismissing the complaint with prejudice, to close all pending motions, and to close this case.

**SO ORDERED.**

Dated:     New York, New York
           June 5, 2026

John G. Koeltl
United States District Judge

17